The court. My name is Bill Tice and I represent Dylan Ostrum. There's one key fact in this case that sort of overlays or ties together the various issues in this case, and that is that the automobile with the locked containers within it was within the cartilage of a house. And that has real significance for the question of whether or not the automobile exception is in play, whether or not there would need to be a search warrant. It has significance for the inventory search and it also has significance for the issue of standing, which kind of straddles both of those two issues. I thought the officers had the permission of the occupant of the house to search the car on the cartilage, so the whole cartilage question is to come on the property and to look at the car. It was not permission to go inside of the car. It was not permission to search the containers in the car. That is in the record. Maybe the officers should have pressed for more, but they didn't. But it establishes the officer's lawful presence in the cartilage, so there's no Fourth Amendment violation involving a cartilage argument. The search of the vehicle after the officers ran the VIN number and discovered it to be stolen is justifiable under the automobile exception or the inventory search because they were going to impound the car. Well, I did say they are all tied together, so let's step back a little bit. I would not maintain that they were illegally on the premises. The owner of the premises said, yes, you can come on. And once they came on, they saw a VIN number which suggested to them that the car was stolen. But that did not give them the go-ahead to conduct an inventory search. The Supreme Court has been clear, beginning in Katie v. Dombrowski, which is a pretty old case, that houses are different from cars. Cars are not houses. When we talk about inventory searches, we're talking about searching some car that's on the public way, accessible to the public. Even the Indianapolis policy statement... Mr. Tice, isn't that a separate issue from where you started with us? You said the one issue that underlies all of this is that the car was on the cartilage of the property. And as Chief Judge Sykes pointed out, the owner of that property or resident of that property gave the law enforcement officers the permission to come into the cartilage. And you even admit that in your reply brief. So how can the cartilage argument help you, given that they had permission to be on that cartilage? Because inventory searches, and this is reflected in the policy statement, you do inventory searches of a car that is on the public way. You don't do inventory searches of cars that are on private property. Even though the owner of the property said, you may come on. Let me just give you a very simple example. If they had come to the owner of that house and said, may we go through your basement? And he had said, sure. And then they find Ostrom safes in the basement, the permission to go into the basement would not give them permission to open up the safes and go through them. And it's the same thing here with the automobile. They could go on and they could look at the car, but they couldn't proceed to tow it. And they certainly couldn't proceed to open up the safes that are within the car. Why couldn't they tow it once they discovered it was stolen? What principle of law prohibits them from grounding the car and towing it? The principle is that there's nothing in the Indianapolis inventory search policy that talks about them towing cars off of private property. Why does that make any difference? It's a stolen car. Okay. It's a stolen car, but it does not give them permission to look through everything that's in the car and open up locked containers that are within the car. Well, that's a separate issue from whether they have permission to tow it, whether they have justification to tow it. Right. I said they're intertwined, but they are separate. They have justification to tow the car once they discover that it's stolen. And it has to be searched before it can be towed for safety purposes. That's well established. And then everything flows from there. Well, I fail to see the safety purposes. Once again, we go back to, this is not an inventory search of a car that's on a public way. Let me go back to the example of the basement. They couldn't come in here and say, we have permission to go into the basement. And for safety reasons, we decided to open up those locked safes. Well, the basement is not going to be towed away to an impound lot. This is a movable object. But they could have left the safes there. They certainly weren't opening those safes to protect the interests of Avis Rent-A-Car, a corporation. And I think everyone agrees that Avis didn't own those safes. And they knew that Avis didn't own those safes. So the inventory search, when you get to the nitty gritty of what to do with the locked containers, really falls apart. And they no longer, because of anything that the owner of the property said to them, had any right to go in and open up those safes. So it looks like you're not too interested in that argument. I think that if you're going to look at the other aspects of this case, you have similar problems with the idea that they never needed a warrant. Mr. Tice, do you agree that if your client knew this car was stolen, that he did not have a reasonable expectation of privacy in it? That seems to be the law, yes. And there's really no proof that he knew that it was stolen. Isn't it your client's burden, though, to prove that he had a reasonable expectation of privacy? It is. But this is where it gets a little tricky, and the case law is maybe not as informative as it should be. He establishes that right by establishing that he had a possessory interest in the car. Without a doubt, he was in possession of that car. And then you come into, well, was it lawful possession? The question is, if knowledge that it's stolen is relevant to whether or not he had a reasonable expectation of privacy, and the burden is on your client to prove he had a reasonable expectation of privacy, why wasn't the burden on him to prove he didn't know it was stolen? His burden to show reasonable expectation of privacy was to show that he had the possessory interest. And if the forward and establish that he knew it was stolen. But how can that be sufficient, even if you have a possessory interest? If you know it's stolen, you've just agreed that you have no reasonable expectation of privacy. But there's no evidence that he knew it was stolen, and the government never presented it. Did your client present anything about whether he knew it was stolen or not? No, it was not his burden. So it's not there. The government didn't present it. And what are you basing your argument that it wasn't his burden on? Because the law seems crystal clear that it is his burden to prove he had a reasonable expectation of privacy. The, I think, and this is why I say the case law is not that informative. I read Sholola as putting the burden on the government. But Sholola says, first of all, it wasn't, it didn't involve a stolen car. And it really says nothing about burden shifting. I read that a couple times, and I didn't see anything in there about burden shifting. Well, if the defendant had had the burden in Sholola, then it's a little bit hard to understand where the court went on to decide the case on the basis that he had a reasonable expectation of privacy. What about the evidence that he switched the license plates? I'm sorry? What about the evidence that he switched the license plates? It doesn't show that he knew that the car was stolen. What it probably shows is he was cheap and didn't want to have to pay an extra registration. That's one explanation. Yeah. But what about- The district court wasn't required to accept that. I want to button up my answer to Judge St. Eve. I think there's also a relevant case law with the in Collins, which was the motorcycle within the cartilage. There was evidence that the motorcycle was stolen and the defendant had bought it, but he didn't really seem to have a title. And the court was not at all troubled by that. They said he's got an expectation of privacy with respect to this motorcycle. So I will certainly grant that the law in this area needs to be tightened up a little bit, but I am not conceding that he failed to establish his possessory interest. But Collins dealt with cartilage. It didn't deal with a stolen vehicle. I'm sorry? Collins dealt with the cartilage argument. It didn't deal with the stolen vehicle. So I don't think that answers the burden issue on who has to prove that he knew or didn't know was stolen. Oh, but in Collins, the allegation was that the motorcycle was stolen. And that's why the policeman came to arrest him. Now, we haven't really gotten to the question of whether or not they needed to have a probable cause. It's our contention that they need to have a warrant. And since they didn't have a warrant, case over as far as if you're looking at it apart from inventory search. If they needed to just have probable cause and not a warrant, the dog sniff in this case was very significant. They bring the dog around. The dog does not alert. Now, the government says, oh, but the dog wasn't trained to alert for drug ledgers or guns. Well, that really slides over a lot of background that probably everyone in this room is familiar with, the drug residue from when you're dealing drugs. It's all over the drugs. It's over the ledgers. It's on the guns. And dogs are constantly alerting to drugs if they're there. And in this case, it turned out drugs were there, but the dog did not alert. And that really- Your client told the officers that he stashed his stuff in the car. So the fact that the dog didn't alert is sort of irrelevant here. No, he didn't tell him that. He said he took the stuff to his father's house. And he didn't say- In the car. In the car, but he didn't say he left it in the car. Now, they were hopeful that he left it in the car. They didn't know. Good guess on their part, but they did not know. And they bring out their canine associate, and it's a negative, no answer. So I think that deals with the question of probability. I've got some time for rebuttal now. I'll see you later. Thank you. Mr. Wood. Your Honor, may it please the court, Bob Wood on behalf of the government. I think, if the court will permit, I'll use my starting time to clarify a couple of points from my brief that it seems like there's some cross-argument. My argument about him giving his keys over was about his awareness and presence in handing the keys over, not a consent argument. It was a seizure pursuant to a warrant. So I just want to be clear, I'm not making a consent argument about the keys. And then also to Your Honor's point a moment ago, there is an Indiana statute that creates a legal obligation to take stolen cars for police officers. It's not part and parcel of the policy itself. It's a legal reference in the policy. And my citation in the brief was to the officer's statement at trial about that law rather than the law itself. But it's in the legal references section of the policy that they have to take, if they know a car is stolen, and there's no way that it's not stolen, they have to take it. And just sticking with that for a moment, the citations that Mr. Ostrom makes to support the argument that the inventory policy applies only on public streets come from the definition section for public nuisance cars. So of course those will deal with public streets. There's a separate definition for abandoned cars, which this isn't an abandoned car, but that's the first page of the policy and it says private property twice, plus the specific provision of undertaking a search that contemplates private property that we cited in our brief. And it's definitely the government's position that under certain circumstances with lawful presence, whether it's on cartilage or otherwise, an inventory policy can apply if its terms state that it applies to private property as well as public property, even if the public streets are the more common situation. On the search of the safes inside, the locked safes, our position is that a second warrant, this is not like a Riley California situation where a second warrant would be necessary to get into the safes if the warrant already says the officers may take the safes and the keys and open them at a later date. The officers had the keys, they found the safes. This is under the automobile exception, our view is they can open the safes. Under the inventory policy exception, if they find safes in the car and they have the keys, they can open them. Otherwise, the inventory would be completely incomplete and they would open themselves up to the kinds of problems. The second sort of problem that Opperman described, which is an accusation that they took something from the defendant. But all of that, of course, is downstream from the fact that he put the stuff in a stolen car. In our view, that's ballgame. And on the misunderstanding point, I would just add that our good faith argument is not a new, if the court sees it as a new type of good faith argument, then it's waived. It is merely building on the embedded bad faith notions in Byrd and trying to underscore the many ways in which this was a good faith undertaking. We're not trying to expand Leon into inventory policy territory. I don't even know exactly how that would work. And Minnesota v. Carter, Your Honor, I think clearly places the burden on the defendant. And I'd also add for completeness that our reading of Minnesota versus Olson does not align with his reading. His view of the privacy interest that he would have in his friend's basement is not supported by Olson because there's no evidence. He could have asked for a hearing and put in evidence that he was a regular overnight guest or had keys to the house or had the friend's permission to exclude people from the house. But there's nothing like that here. And there's no need for a hearing. The facts as they exist, first of all, he didn't ask for one. And the facts as they exist are sufficient. So unless there are other questions, I'll rest on my grace. Thank you. Thank you. Mr. Case. I'd like to go back briefly to the Indianapolis policy statement. Yes, it is true that the policy statement in talking about abandoned cars talks about cars that are on the public way. But the point is a broader one that, as I say, comes from Katie versus Dombrowski, namely that you don't really legitimately talk about inventory searches unless you're talking about a car that's on the public way. Cars that are part of the cartilage, that's a totally different ballgame. And in that the police had to protect themselves by doing an inventory, that rings pretty hollow. Avis is not going to sue them saying, oh, when we opened the safes, we didn't find the guns and marijuana and whatnot that were in there. Avis doesn't care. This is really taking something that applies in one situation, inventory searches of cars on the public way, and applying it to a policy statement. Finally, I notice that the government has kind of backpedaled from its point about good faith, although at this point I'm still not sure how that fits in. And really, this is a case that's got some real issues involved. I don't imagine that you're going to start talking about issues that the government never briefed below and certainly didn't brief here. So I ask you to reverse and review. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.